Donald Swearingen, et al. v. Estate of Vivian Swearingen, et al.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-132-CV

DONALD SWEARINGIN, BILLY APPELLANTS

JACK SWEARINGIN, BEVERLY 

HOOKER, CONNIE MORRIS, AND 

FRANKIE MAE SMITH

V.

ESTATE OF VIVIAN SWEARINGIN, APPELLEES

TERRY ELLIS, INDIVIDUALLY AND 

AS TRUSTEE OF THE TERRY ELLIS 

2003 TRUST AND AS CO-EXECUTOR 

OF THE VIVIAN SWEARINGIN ESTATE, 

AND DONNA MULLEN, INDIVIDUALLY 

AND AS TRUSTEE OF THE DONNA 

MULLEN 2003 TRUST AND AS 

CO-EXECUTOR OF THE VIVIAN 

SWEARINGIN ESTATE, BELLE HILL, 

LLC, AND DORMAN MAX, LTD.

------------

FROM PROBATE COURT NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

The primary issue that we address in this summary judgment appeal is whether the 1967 contractual will of Bill and Vivian Swearingin limited or restricted in any manner Vivian’s right during her lifetime to make inter vivos dispositions of estate property.  Because the contractual will conveyed the couple’s estate to Vivian in fee simple upon Bill’s death and because the contractual will did not limit or restrict Vivian’s right to make inter vivos dispositions, we hold that the trial court correctly rendered a summary judgment for Appellees on Appellants’ breach of contract, constructive trust, action to set aside transfers, tortious interference with inheritance rights, conversion and misappropriation of property claims, as well as on Appellants’ request for an accounting and a temporary injunction.  Accordingly, we will affirm the trial court’s summary judgment for Appellees on these claims.

But because Appellants’ fraud and conspiracy to defraud claims are not predicated on Vivian’s alleged inability under the 1967 contractual will to make inter vivos transfers of estate property and because these claims are not barred by the doctrine of res judicata, we will reverse the trial court’s summary judgment on these claims and remand Appellants’ fraud and conspiracy to defraud claims to the trial court.

II.  Factual
 
and Procedural Background

Although the facts are undisputed, this case presents a quirky and twisted procedural background.  Bill and Vivian Swearingin executed a joint contractual will on August 29, 1967.  The joint will provided that the survivor would take all the property owned by either or both in fee simple and that any property remaining at the death of the survivor would be divided one-half to Vivian’s named descendants and one-half to Bill’s children.  Bill died later in 1967, and Vivian probated the joint will. 

Approximately thirty-five years later, Vivian created an estate plan.  On November 9, 2002, Vivian executed a Statutory Durable Power of Attorney in favor of her nephew, Terry Ellis, giving him immediate power to act as her agent.  On March 7, 2003, Vivian created two trusts and named Ellis and her niece, Donna Mullen, as trustees.  Vivian also executed a Special Warranty Deed, conveying real property to Ellis and Mullen in their capacities as trustees.  Vivian executed a new will on March 20, 2003.  

Bill’s descendants—Appellants Donald Swearingin, Billy Jack Swearingin, Beverly Hooker, Connie Morris, and Frankie Mae Smith—learned of Vivian’s inter vivos transfers and filed suit against Vivian, Mullen, Ellis, and Loraine Ellis in the county court at law in Parker County, complaining of the transfers.  Appellants asserted numerous causes of action, including a declaratory judgment action
(footnote: 2) and a claim for fraud and conspiracy to defraud, alleging that Vivian was mentally incapacitated when she executed these documents and that Ellis and Mullen had induced Vivian into making these inter vivos transfers to defraud Appellants of the portion of the estate that they would inherit under the 1967 contractual will.  But Vivian was still alive when Appellants filed their lawsuit in Parker County, so the trial court sustained Appellees’ plea to the jurisdiction, which alleged that except for the declaratory judgment action, Appellants’ claims were not ripe.  The Parker County court entered a January 22, 2004 order dismissing all of Appellants’ claims without prejudice except the declaratory judgment action.

Six months later, pursuant to an agreement by the parties, the Parker County court signed a final judgment declaring that Bill and Vivian’s 1967 joint will “constitutes a contract between Bill Swearingin and Vivian Swearingin” and stating that “all relief not expressly granted herein is hereby denied.”  Appellants filed in this court a notice of appeal from the January 22, 2004 order of partial dismissal and also filed in the trial court a petition for deposition to perpetuate the testimony of Vivian Swearingin and Bobby Joe Tipton.  This latter cause—styled “In re Petition to Perpetuate Testimony of Vivian Swearingin and Bobby Joe Tipton”—was transferred by agreed order to the 17th District Court in Tarrant County.  Vivian subsequently died, and her March 20, 2003 will was admitted to probate. 

After Vivian’s death, Appellants moved to dismiss their appeal of the Parker County order, contending that the issues presented in that appeal had been mooted by Vivian’s death. 
 We granted Appellants’ motion and dismissed that appeal.  After Vivian’s death, Appellants also filed a petition in intervention against Ellis and Mullen in the suit pending in the 17th
 District Court of Tarrant County, seeking to set aside the inter vivos transfers Vivian made to Ellis and Mullen in their capacities as trustees based on fraud, conspiracy to defraud, conversion, misappropriation of property, and tortious interference with inheritance rights.  Appellants also asked the court to set aside the transfers,  to impose a constructive trust, to enter a temporary injunction, to assess punitive damages and attorney’s fees, and to require Appellees to produce an accounting.
(footnote: 3)  The parties agreed to transfer this suit from the 
17th
 District Court of Tarrant County to the probate court in Tarrant County in which the probate of Vivian’s March 20, 2003 will was pending. 

In the probate court, Appellees filed a motion for partial summary judgment on the grounds that Appellants’ claims seeking to invalidate the November 9, 2002 Statutory Durable Power of Attorney, the March 7, 2003 Special Warranty Deed, and all transfers made pursuant to these instruments were barred because they were all predicated on the invalid theory that Vivian lacked authority under the 1967 contractual will to make these transfers and based on the doctrine of res judicata.
(footnote: 4)  Appellees claimed that Appellants could have, but did not, pursue these claims to final adjudication in the Parker County suit.  After Appellees filed their motion for summary judgment, Appellants likewise moved for partial summary judgment.  Appellants asked the trial court to impose a constructive trust on all assets transferred from Vivian to Appellees.  Appellees responded by filing a cross-motion seeking summary judgment on Appellants’ causes of action for breach of contract and constructive trust, specifically arguing that the 1967 contractual will did not limit Vivian’s ability or authority to make inter vivos transfers. 

After a hearing, the probate court signed two summary judgments:  a partial summary judgment granting judgment for Appellees on Appellants’ breach of contract and constructive trust claims, and a final summary judgment ruling that Appellants were barred from seeking to invalidate the Statutory Durable Power of Attorney, the Special Warranty Deed, and the transfers made pursuant to these documents and that all other relief was denied.  This appeal followed.

III.  Summary Judgment For Appellees

Appellants contend in two issues that the trial court erred (1) by granting summary judgment on their claims to enforce the 1967 contractual will and by failing to impose a constructive trust on assets held by Appellees and (2) by rendering a final summary judgment that their claims seeking to invalidate the Statutory Durable Power of Attorney, the Special Warranty Deed, and the transfers made pursuant to those instruments were barred by res judicata. 
A. Standard of Review

A movant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.  
IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason
, 143 S.W.3d 794, 798 (Tex. 2004)
.  When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.  
Id.
  A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense.  
Rhone-Poulenc, Inc. v. Steel
, 997 S.W.2d 217, 223 (Tex. 1999).  To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.  
Ryland Group, Inc. v. Hood,
 924 S.W.2d 120, 121 (Tex. 1996).  
When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties’ summary judgment evidence and determine all questions presented.  
FM Props. Operating Co. v. City of Austin
, 22 S.W.3d 868, 872 (Tex. 2000).  The reviewing court should render the judgment that the trial court should have rendered.  
Id
.

B. Law on Contractual Wills

Contractual wills represent not only a proposed testamentary disposition of property inherent in a will but also a contract between the testators.  
Magids v. Am. Title Ins. Co.
, 473 S.W.2d 460, 464 (Tex. 1971) (discussing this duality); 
Weidner v. Crowther
, 157 Tex. 240, 301 S.W.2d 621, 624 (1957) (stating that a contract of the parties lies at the heart of a mutual will).  Pursuant to that portion of the will that manifests the contract, the testators agree to a particular disposition of property once both die.  
Meyer v. Shelley
, 34 S.W.3d 619, 622 (Tex. App.—Amarillo 2000, no pet.).
  Upon the death of one of the two, the bargain or agreement becomes irrevocable.  
Id.
  That is, the survivor cannot alter the agreement by making a testamentary disposition of the property subject to the agreement in a manner different from the agreement.  
Id.
; 
Knesek v. Witte
, 715 S.W.2d 192, 198 (Tex. App.—Houston [1st Dist.] 1986, writ ref’d n.r.e.).

C. Analysis of Claims Predicated on Vivian’s Alleged Lack

of Authority to Make Inter Vivos Transfers of Estate Property

Appellants argue that Vivian disposed of estate property in violation of the contractual will by making transfers 
prior
 to her death, which reduced the estate that was available to Appellants as the remaindermen.
(footnote: 5)  Appellants do not argue on appeal that the trial court erred by admitting Vivian’s 2003 will to probate or that the 2003 will gave Appellants a different percentage of the residuary than the 1967 will.  Appellants’ argument—that Vivian breached the contractual part of her 1967 mutual will by transferring all of her assets to Appellees—is not supported by case law and contradicts the plain meaning of the terms of the 1967 contractual will. 

We begin by examining the pertinent terms of the 1967 contractual will.  Bill and Vivian Swearingin’s contractual will provided in paragraph 2 that

after the death of the one of us dying first the survivor always maintain ownership of and use and occupancy of one tract of land improved with a residence for his or her home until his or her death, and that the survivor of us,  Bill Swearingin or Vivian Swearingin, as the case may be, 
shall have absolutely and in fee simple 
all of the estate of every character and description, real, personal or mixed, which either or both of us may own or have any interest in at the time of the death of the one of us dying first, hereby intending to include both community and separate property, and we hereby devise and bequeath unto such survivor all of such property, subject, however, to the terms and provisions of Paragraph 4 of this our joint and mutual last will and testament, concerning disposition of what property should remain on hand after the death of the one of us dying last, and 
nothing in this Paragraph 2 or in Paragraph 4 shall constitute any restraint or restriction on the full fee ownership of the survivor of us of any property, or on the right of such survivor to manage, control, mortgage, sell, lease
[,]
 or use the proceeds of such property as he or she sees fit
, or if he or she needs such property or the proceeds of such property to live on or to pay any indebtedness on the home of his or her choice.  [Emphasis added.]

Paragraph 4 of the will provided that

after the death of the one of us dying last, . . . it is our will and desire, and the will and desire of each of us, that all of the property either or both of us may own or have an interest in at the time of our deaths, or at the time of the death of the one of us dying last, hereby intending to include both community and separate property, whether it be the one place of our or his or her home or whatever else may then be on hand in the way of property, be sold by our Independent Executors or Independent Executrices hereinafter named . . . and divided into two equal halves, one[-]half to go to Loraine Ellis, sister of Vivian Swearingin, . . . and if Loraine Ellis be not then living, to Terry Ellis and Donna Ellis equally, . . . and the other one[-]half to go to the three children of Bill Swearingin in three equal shares, such children being James Orland Swearingin,
(footnote: 6) Melvin Donald Swearingin[,] and Frankie Mae Swearingin Smith, and if one or more or all of such children should then be dead, their share or portion to go to their children who survive them, in equal shares, . . . .

Reading these paragraphs together, it is clear that Bill and Vivian in language free of ambiguity clothed whichever of them survived the other with the unqualified right to convey the estate property during his or her lifetime and limited the rights of the remaindermen to whatever estate remained in the survivor at the time of his or her subsequent death. 
 See Harrell v. Hickman
, 147 Tex. 396, 402-03, 215 S.W.2d 876, 879 (1948) (holding that survivor taking conditional fee or life estate with full power of disposition under will may dispose of property as she sees fit during her lifetime); 
Singleton v. Donalson, 
117 S.W.3d 516, 519 (Tex. App.—Beaumont 2003, pet. denied)
 
(holding that when will gives 
life tenant unqualified power to dispose of property during his lifetime, the remainder beneficiaries have no justiciable interest in any property except that which has not been disposed of at the life tenant's death); 
Watson v. Watson
, 576 S.W.2d 467, 469 (Tex. Civ. App.—Waco 1978, no writ) (same).  Because the contractual will did not limit Vivian’s powers, as the surviving spouse, to liquidate the estate’s assets during her lifetime, she had the right to transfer any of her property, including into trust.  
See
 
Kelly v. Lansford
, 572 S.W.2d 369, 373 (Tex. Civ. App.—Fort Worth 1978, writ ref’d n.r.e.) (stating that person has capacity to transfer property inter vivos into trust to the extent that she has capacity to transfer property inter vivos free of trust); 
Richardson v. Lingo
, 274 S.W.2d 883, 886 (Tex. Civ. App.—Galveston 1955, writ ref’d n.r.e.) (holding appellee had right of inter vivos alienation and that his actions were completely consistent with the will under which he received title and the contract under which the will was made). 
 Vivian’s inter vivos transfers were authorized by the 1967 will and did not change the ultimate testamentary disposition of the estate property remaining at her death; consequently, Vivian did not breach the 1967 contractual will.  
See Meyer
, 34 S.W.3d at 623; 
Kelly
, 572 S.W.2d at 373.  In fact, Appellants’ complaint is not that they were no longer entitled to the portion of the residuary allocated them pursuant to the 1967 will; their complaint is that the residuary was substantially depleted by Vivian’s inter vivos transfers.

In short, Appellees conclusively established that the 1967 contractual will authorized Vivian to make inter vivos transfers, so the trial court correctly granted summary judgment for Appellees on Appellants’ claims for breach of contract, constructive trust, action to set aside transfers, tortious interference with inheritance rights, and conversion and misappropriation of property claims, as well as on Appellants’ request for an accounting and a temporary injunction.  All of these claims asserted by Appellants were premised on their legally erroneous construction of the 1967 contractual will as limiting Vivian’s right to make inter vivos transfers of estate property.  Accordingly, we overrule Appellants’ first issue.

D.  Analysis of Fraud and Conspiracy to Defraud Claims

Appellants also asserted claims against Ellis and Mullen for fraud and conspiracy to defraud, alleging that Vivian lacked capacity to make the inter vivos transfers and that Ellis and Mullen induced her into making these transfers to deprive Appellants of the remainderman interest in the estate granted them under the 1967 contractual will.  Appellants pleaded these same fraud and conspiracy to defraud causes of action in their suit in Parker County.  But the Parker County court dismissed these claims without prejudice and, subsequently, entered a final declaratory judgment in that suit.  Because Appellants had previously brought in their Parker County suit the same fraud and conspiracy to defraud claims they assert here, Appellees moved for a partial summary judgment on the affirmative defense of res judicata; the trial court granted their motion.

“To establish res judicata, the claimant must show:  (1) there was a prior final judgment on the merits rendered by a court of competent jurisdiction; (2) the parties or those in privity with them are identical in both suits; and (3) the same cause of action is involved in both suits.”  
McGowen v. Huang, 
120 S.W.3d 452, 460 n.4 (Tex. App.—Texarkana 2003, pet. denied) (citing 
Amstadt v. United States Brass Corp.
, 919 S.W.2d 644, 652 (Tex. 1996)).  Here, Appellants’ fraud and conspiracy to defraud claims were not adjudicated on the merits in the Parker County suit.  Instead, the Parker County court sustained Appellees’ plea to the jurisdiction and dismissed these claims without prejudice.  Unadjudicated claims dismissed without prejudice are not subsequently barred by the doctrine of res judicata.  
See Brown v. Prairie View A & M Univ., 
630 S.W.2d 405, 408 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) (holding that an order dismissing a lawsuit for want of jurisdiction is not res judicata of the merits of that lawsuit and does not bar the plaintiff from bringing the same cause again once the impediment to jurisdiction has been removed), 
abrogated on other grounds, Harris County v. Sykes
, 136 S.W.3d 635, 640 (Tex. 2004) (holding that dismissal for want of jurisdiction based on sovereign immunity was res judicata as to subsequent suit against governmental employee under section 101.106 of the Texas Tort Claims Act); 

see also Welch v. Hrabar
, 110 S.W.3d 601
, 
607 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)
 
(recognizing that if a suit is dismissed without prejudice, or if the plaintiff takes a voluntary nonsuit, res judicata does not impede subsequent actions); 
Bell v. Moores
, 832 S.W.2d 749, 754 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (same); 
Home Builders Ass’n of Miss., Inc. v. City of Madison
, 143 F.3d 1006, 1013 (5th Cir. 1998) (stating that a dismissal for lack of subject matter jurisdiction is not a ruling on the merits and therefore cannot have res judicata effect and bar plaintiffs from pursuing claims in state court).

Appellees argue, however, that because the declaratory judgment subsequently entered by the Parker County court contains a “Mother Hubbard” clause, it constitutes a final judgment on the merits of Appellants’ fraud and conspiracy to defraud claims.  We cannot agree.  These claims had been dismissed on Appellees’ motion, prior to entry of the final declaratory judgment; they were not pending at the time the final judgment was signed, and the final judgment did not dispose of them.  
See Lehman v. Har-Con Corp., 
39 S.W.3d 191, 200 (Tex. 2001) (explaining that a final judgment is one that finally disposes of all 
remaining
 claims and indicating that a dismissed claim is not a remaining claim).

We can affirm a summary judgment only on grounds expressly set forth in the summary judgment motion.  
Stiles v. Resolution Trust Corp
., 867 S.W.2d 24, 26 (Tex. 1993) (“[A] summary judgment cannot be affirmed on grounds not expressly set out in the motion or response”).  Because Appellees moved for summary judgment only on the grounds that the 1967 contractual will did not prohibit Vivian from making inter vivos transfers and based on the doctrine of res judicata, we cannot sustain the summary judgment on any other grounds.  
See id
.  We have already held that the 1967 contractual will did not prohibit Vivian from making inter vivos transfers.  And, for the reasons set forth above, 
the doctrine of res judicata does not bar Appellants’ fraud and conspiracy to defraud claims.  Therefore, the trial court erred by granting summary judgment for Appellees on these claims based on res judicata.  We sustain Appellants’ second issue to the extent it challenges the summary judgment on Appellants’ fraud and conspiracy to defraud claims.

IV.  Conclusion

Having overruled Appellants’ first issue, we affirm the trial court’s summary judgment on Appellants’ claims for breach of contract, constructive trust, action to set aside transfers, tortious interference with inheritance rights, and conversion and misappropriation of property, as well as on Appellants’ request for an accounting and a temporary injunction.  Having sustained Appellants’ second issue in part, we reverse the trial court’s summary judgment on Appellants’ fraud and conspiracy to defraud claims and remand those claims to the trial court.

SUE WALKER

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and WALKER, JJ.

DELIVERED: June 15, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
Specifically, Appellants sought 

a declaration that the [1967] Bill and Vivian Swearingin Will constitutes an irrevocable contractual Will between those parties and that Plaintiffs have vested rights in and to all property in the name of, or being held for the benefit of, Vivian Swearingin; that any transfers of the property made by Vivian Swearingin, Terry Ellis[,] or Donna Mullen are void.

3:
Appellants subsequently amended their petition to join the Estate of Vivian Swearingin; Ellis and Mullen, individually and as co-executors; Belle Hill, LLC; and Dorman Max, Ltd.  They also added a cause of action for breach of contract.

4:
Appellees’ summary judgment motion explained that, “[a]s an initial matter, Plaintiffs’ claims are meritless because the Will authorized Vivian, as the survivor, to dispose of the inherited property ‘as [she saw] fit’ during her lifetime.” 

5:
Appellants are “remaindermen” under the will, not the definition commonly used in real property.  
See
 
Black’s Law Dictionary
 1293 (6th ed. 1990) (defining a “remainderman” under a will as “the party who will receive what is left of the decedent’s property after all specific bequests have been satisfied”).

6:
James Swearingin is deceased; his children are Connie Morris, Beverly Hooker, and Billy Jack Swearingin.